IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PAUL T. BAILEY, SHIRLEY J. BAILEY, UNKNOWN OWNERS and NON RECORD CLAIMANTS, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 08 C 3050 |
| | ) ) | Judge Kendall presiding |
| FIRST FRANKLIN FINANCIAL CORPORATION, GARFIELD MORTGAGE CORP., | ) ) ) | |
| Defendants | ) ) | |

## ANSWER

Defendant Garfield Mortgage Corporation, by its attorney, John J. Lydon, in answer to the Plaintiffs' Complaint, states the following:

(Introduction)

1.      In this Complaint the Baileys bring claims against Defendants based on their fraudulent conduct and misrepresentations in connection with the refinance of the Baileys' home. Defendants conspired and fraudulently induced the Baileys to refinance their subject property on June 27, 2007.

ANSWER:      Defendant denies the allegations in paragraph 1.

2.      Defendants knew that the Baileys would not be able to make the mortgage payments as the Baileys did not have the income sufficient to afford the new monthly payments subsequent to the refinance.

ANSWER:      Defendant admits the allegations in paragraph 2.

3.     Each of the Defendants profited from the refinance.  The above described transaction which was disguised as a refinance was in fact equity stripping and a species of mortgage rescue fraud, which Illinois statutes are designed to protect.  The Baileys are in jeopardy of losing ownership of their home and have lost the equity they had accumulated in the property.  This lawsuit is filed against Defendants for damages suffered by the Baileys due to the fraudulent actions of Defendants.

ANSWER:     Defendant denies the allegations in paragraph 4.

(Jurisdiction)

4.     This Court has subject matter jurisdiction under 28 U.S.C. §1331 (general federal question), 1337 (interstate commerce), and 1367 (supplementary jurisdiction) 42 U.S.C. §3613 and §3717 (Fair Housing Act), 15 U.S.C. §1691e (Equal Credit Opportunity Act), and 15 U.S.C. §1679b (Credit Repair Organization Act).

ANSWER:     Defendant admits the allegations in paragraph 4.

(Parties)

5.     Paul T. Bailey and Shirley J. Bailey, are the Plaintiffs.  They have resided in their home commonly known as 1658 West Waseca Place, Chicago, Illinois for more than 30 years.

ANSWER:     Defendant admits the allegations in paragraph 5.

6.     Defendant Garfield Mortgage Corp. is an Illinois Mortgage Brokerage Company located at 350 West Ontario, 4th Floor in Chicago, Illinois 60610. (hereinafter, "Garfield Mortgage Corp.")

ANSWER:     Defendant admits that the allegations in paragraph 6.

7.     Defendant First Franklin Financial, Corp. was the end lender of Garfield Mortgage Corp., located at 1051 Perimeter Drive Suite 800, Schaumburg, Illinois 60173. (hereinafter, "First Franklin").

ANSWER:     Defendant denies the allegations in paragraph 7.

(Facts Common to All Counts)

8.     On or about June 2, 2007 (a Saturday), the Baileys were contacted by a woman named Denise Riley, who worked for Garfield Mortgage Corporation.

ANSWER:     Defendant denies the allegations in paragraph 8.

9.     Denise Riley called, unsolicited, and said she was in the area assisting homeowners in need of extra cash for home improvements.

ANSWER:     Defendant denies the allegations in paragraph 9.

10.     Denise Riley, stopped by the Baileys residence, took a written mortgage application as an agent and employee of Garfield Mortgage Corporation.

ANSWER:     Defendant admits the allegations in paragraph 10.

11.     The Loan Application is replete with inaccuracies and fraudulent statements. (See Plaintiffs' Exhibit "A")

    a.     The Loan Application fraudulently overstates the Plaintiffs' income at $3,426.25. The Baileys total monthly income is $1,226.00.  Mr. Paul Bailey receives only social security in the amount of $1,100.00 and VA benefit in the amount of $126.00.

    b.     The Loan Application fraudulently states that Paul Bailey is employed, at Morgan Park Pentecostal Church in the maintenance department.  The truth is that Paul Bailey is retired.

    c.     The Loan Application fraudulently overstated the appraised value of their real estate at $185,000.00.  The estimated appraised value

3

of their two bedroom, one bathroom frame home (on a concrete slab) is $125,000.00.

     d.     The Loan Application fraudulently states that the Baileys were interviewed by a Kurt Zemla of Garfield Mortgage Corp. The truth is that the Baileys have never spoken with or met Mr. Zemla. Their only contact with Garfield Mortgage Corp. was through Denise Riley.

ANSWER:     Defendant denies the allegations in paragraphs 11(a), (b), and (c) and admits the allegations of paragraph 11(d).

12.     The Baileys refinanced the Property on June 22, 2007 and the actual funding date was June 27, 2007.

ANSWER:     Defendant denies the allegations in paragraph 12.

13.     Garfield Mortgage Corp. charged the Baileys $895.00 for a processing fee, $799.00 for an administration fee, $350.00 for an appraisal fee, $7.68 for a credit report, and $3,060.00 for a loan origination fee. In total, Garfield Mortgage Corp. charged the Baileys $5,111.68 to broker the loan (See Exhibit "B – Settlement Statement lines 801-809).

ANSWER:     Defendant admits the allegations in paragraph 13 except that Defendant denies it charged $799,99 for an administration fee and that "[i]n total, [it] charged the Baileys $5,111.68 to broker the loan."

14.     Garfield Mortgage Corp. received a Yield Spread Premium from First Franklin in the amount of $1,530.00 (See Exhibit "B" - Settlement Statement line 810).

ANSWER:     Defendant admits the allegations in paragraph 14.

15.     In the mortgage lending industry, a yield spread premium ("YSP") is an incentive payment by a lender to a broker based on the extent to which a broker successfully induces the borrower to accept an interest rate on the loan that exceeds the lenders base or "par" interest rate.

4

The par rate is the minimum rate at which the lender is willing to make the loan based on the applicants' qualifications.

> ANSWER:     Defendant denies the allegations in paragraph 15.

16.     For example, if the broker procures an interest rate on the loan that is .50% above par the lender will pay a YSP of, e.g., of 0.5% of the principal amount of the loan to the broker. The amount of the YSP corresponds to the amount of increase in rate.

> ANSWER:     Defendant denies the allegations in paragraph 16.

17.     The lender's YSP/interest rate formula(s) are found in the lender's rate sheets or similar forms sent to brokers or posted for them on a regular basis.

> ANSWER:     Defendant admits the allegations in paragraph 17.

18.     The lender's payment of a YSP and the broker's imposition of the higher interest rate–as well as the lender's and broker's decisions as to the amount of each–are not based on the applicant's qualifications or level of credit risk, as determined by objective factors such as credit scores, debt-to-income ratio and loan-to-value ratio, etc.

> ANSWER:     Defendant denies the allegations in paragraph 18.

19.     First Franklin's payment and Garfield Mortgage Corp receipt of YSPs disproportionately adversely affects minority borrowers such as Plaintiffs.  Defendants, on average, subjected Plaintiffs and other minority borrowers to more frequent and/or larger YSP's due to their race.  This necessarily means that, on average, defendants assign higher interest rates to minorities, including Plaintiffs, than to whites, regardless of qualifications.

> ANSWER:     Defendant denies the allegations in paragraph 19.

20.     As alleged more fully below, Plaintiffs' higher interest rate was the direct

discriminatory effect of defendants' discretionary pricing policy and practice of imposing larger and/or more frequent YSPs on minority borrowers' transactions.

ANSWER:     Defendant denies the allegations in paragraph 20.

21.     This result was known and intended by Defendants. Loan pricing disparities and the role of YSPs have been the subject of industry studies and discussion. Defendants, who were on notice of these concerns, continued their lucrative practice anyway.

ANSWER:     Defendant denies the allegations in paragraph 21.

22.     First Franklin, a centralized decision-maker in the mortgage lending market, designed and established the YSP incentive structure for its brokers and the formulas according to which it would pay YSPs in order to obtain corresponding increases in interest rates.

ANSWER:     Defendant denies the allegations in paragraph 22.

23.     First Franklin pays YSPs so that it can originate loans with higher interest rates, which results in more profitable loans for it to hold or to sell on the secondary market.

ANSWER:     Defendant denies the allegations in paragraph 23.

24.     First Franklin's system of paying YSP delegates significant authority and discretion over loan pricing to Garfield Mortgage Corp. and other brokers. Its system gives brokers incentives to engage in the subjective mark-up of credit applicants' interest rates, without regard to qualification or risk. The only constraint is what rate the applicant will accept.

ANSWER:     Defendant denies the allegations in paragraph 24.

25.     First Franklin is well aware of its practice of paying YSPs influences the behavior of its mortgage brokers, including Garfield Mortgage Corp., Riley and Zemla in Plaintiffs' transaction.

ANSWER:    Defendant denies the allegations in paragraph 25.

26.    In addition, First Franklin knows who its likely customers are, including where they live, their general credit profile and their race or ethnicity. First Franklin also knows who its brokers are, including the biographical communities in which they conduct marketing and broker loans as well as the racial ethnic composition of the pool of brokers' customers.

ANSWER:    Defendant denies the allegations in paragraph 26.

27.    In addition to paying and receiving YSPs, First Franklin and Garfield Mortgage Corp. intentionally and disproportionately target minorities for higher cost loans, regardless of their qualifications.

ANSWER:    Defendant denies the allegations in paragraph 27.

28.    As a result of Defendants' conduct, the Baileys were induced, to sign loan documents providing for a loan that was unnecessarily expensive and which was made on less favorable terms than loans defendants brokered or made to Caucasians.

ANSWER:    Defendant denies the allegations in paragraph 28.

29.    The total fees received by Garfield Mortgage Corp. from First Franklin and the Baileys was $6,641.63.

ANSWER:    Defendant denies the allegations in paragraph 29.

## COUNT I
### (Illinois Consumer Fraud and Deceptive Business Practices Act)

30.    The Baileys realleges and incorporates by this reference paragraphs 1-29 above.

ANSWER:    Defendant incorporates in answers to paragraph 1-29 as its answer
to paragraph 30.

31.     The Defendants conduct in fraudulently inducing the Baileys to refinance their Property constituted an unfair or deceptive act or practice within the meaning of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1.

ANSWER:     Defendant denies the allegations in paragraph 31.

32.     The Defendants intended that the Baileys rely on their unfair or deceptive acts or practices when they fraudulently induced the Baileys to refinance their home.

ANSWER:     Defendant denies the allegations in paragraph 32.

33.     The Defendants intentionally failed to disclose to the Baileys that the Baileys would not in fact be able to afford and pay for their new mortgage to any third party loan servicer.

ANSWER:     Defendant denies the allegations in paragraph 33.

34.     The deceptive acts of the Defendants as stated above occurred during a course of conduct that involved trade or commerce.

ANSWER:     Defendant denies the allegations in paragraph 34.

35.     As a result of the Defendants' fraudulent acts, the Baileys might lose their right to inhabit the home they have lived in for more than 30 years.

ANSWER:     Defendant denies the allegations in paragraph 35.

36.     The unfair and deceptive acts or practices of the Defendants directly and proximately caused the Baileys damages.

ANSWER:     Defendant denies the allegations in paragraph 36.

37.     The unfair and deceptive acts of practices of the Defendants stated above offend the public policy of the State of Illinois.  The unfair and deceptive acts or practices of the

8

Defendants as stated above are immoral, unethical, oppressive, and unscrupulous and cause substantial injury to consumers in Illinois. Illinois has a clear public policy against the type of conduct by the Defendants in conspiring to strip the equity from the Baileys' Property. This public policy is expressed in the Illinois Fairness in Lending Act, 815 ILCS 120.

ANSWER:     Defendant denies the allegations in paragraph 37.

38.     The Baileys reserve the right to bring claims under the Illinois Fairness Lending Act because the Defendants are believed to be a Financial Institution as defined in 815 ILCS 120/2.

ANSWER:     Defendant denies the allegations in paragraph 38.

39.     The Baileys relied on the assurance of the Defendants that they would be able to pay the mortgage on the Property.

ANSWER:     Defendant denies the allegations in paragraph 39.

40.     Had the Defendants disclosed to the Baileys that they would not be able to afford and pay the mortgage on the Property, the Baileys would not have refinanced the Property.

ANSWER:     Defendant denies the allegations in paragraph 40.

41.     As a direct and proximate result of the above violations of the Illinois Consumer Fraud and Deceptive Business Practice Act, the Defendants are liable to the Baileys in the sum of the Baileys actual economic damages in addition to reasonable attorney's fees and costs.

ANSWER:     Defendant denies the allegations in paragraph 41.

## COUNT II
### (Breach of Fiduciary Duty)

42.     The Baileys realleges and incorporates by this reference paragraphs 1-29 as

9

though fully set forth.

ANSWER:    Defendant incorporates in answers to paragraph 1-29 as its answer
to paragraph 42.

43.    The Defendants Garfield Mortgage Corp., owed a fiduciary duty to the Baileys.
The Defendants, Garfield Mortgage acted as the Baileys' agent in advising the Baileys to enter
into the refinance transaction.  The Baileys entrusted their business affairs to Garfield Mortgage
Corp., Inc. and placed trust and confidence in Denise Riley and Garfield Mortgage Corp. such
that Garfield Mortgage Corp. such that Garfield Mortgage and Denise Riley exercised superiority
and influence over the Baileys.  These special circumstances created a fiduciary relationship
because of the disparity in business experience and. knowledge of the true nature of the real
estate transaction.

ANSWER:    Defendant denies the allegations in paragraph 43.

43.    The Defendants Garfield Mortgage Corp. and Denise Riley breached their
fiduciary duty to the Baileys.

ANSWER:    Defendant denies the allegations in the second paragraph 43.

44.    The breach of fiduciary duty by Garfield Mortgage Corp. and Denise Riley
proximately caused damages to the Baileys.

ANSWER:    Defendant denies the allegations in paragraph 44.

## COUNT III
### (Common Law Fraud–Garfield Mortgage Corp)

45.    The Baileys realleges and incorporates by this reference paragraphs 1-29 above.

ANSWER:    Defendant incorporates in answers to paragraph 1-29 as its answer
to paragraph 45.

10

46.     The Defendant, Garfield Mortgage Corp., made false statements of material fact to the Plaintiffs in that they told the Baileys that they would be able to afford and pay the mortgage on the Property subsequent to the refinance.

ANSWER:     Defendant denies the allegations in paragraph 46.

47.     The Defendant, Garfield Mortgage Corp, made misrepresentations of material fact by fraudulently inflating Paul Bailey's income knowing that he would not be able to afford and pay the mortgage subsequent to the refinance.

ANSWER:     Defendant denies the allegations in paragraph 47.

48.     The Defendant, knew that the statements contained in the loan application were false (See Exhibit "A") and that they knew that the Baileys could not afford and pay for the mortgage subsequent to the refinance.

ANSWER:     Defendant denies the allegations in paragraph 48.

49.     The Defendant intended that the statements and material omissions would induce the Baileys to refinance the property.

ANSWER:     Defendant denies the allegations in paragraph 49.

49.     The Baileys in fact relied on the misrepresentations and material omissions made by the Defendant.

ANSWER:     Defendant denies the allegations is the second paragraph 49.

50.     The misrepresentations and omissions of the Defendant to the Baileys were material in that the Baileys would have acted differently had they been aware of the financial repercussions of the refinance.

ANSWER:     Defendant denies the allegations in paragraph 50.

11

51.    As a direct and proximately result of the fraudulent conduct of the Defendant, the Baileys suffered substantial economic damages in that the Baileys may lose equity in their Property, may lose ownership of the Property, and that they are forced to incur increased mortgage payments.

ANSWER:    Defendant denies the allegations in paragraph 51.

## COUNT IV
### (Fair Housing Act)

52.    The Baileys realleges and incorporates by this reference paragraphs 1-29 as though fully set forth.

ANSWER:    Defendant incorporates in answers to paragraph 1-29 as its answer to paragraph 52.

53.    This claim is against both Defendants, First Franklin and Garfield Mortgage Corp.

ANSWER:    Defendant denies the allegations in paragraph 53.

54.    Both Defendants, First Franklin and Garfield Mortgage Corp. violated the Fair Housing Act, 43 U.S.C. §3605, and §3613 by paying and receiving, respectively, higher yield premiums with respect to loans made to minority borrowers, which necessarily impacts the rates charged to such borrowers.

ANSWER:    Defendant denies the allegations in paragraph 54.

## COUNT V
### (Equal Credit Opportunity Act)

55.    The Baileys realleges and incorporates by this reference paragraphs 1–29 as though fully set forth.

ANSWER:    Defendant incorporates in answers to paragraph 1-29 as its answer
to paragraph 55.

56.    This claim is against both Defendants, First Franklin and Garfield Mortgage Corp.

ANSWER:    Defendant admit the allegations in paragraph 56.

57.    Both Defendants, First Franklin and Garfield Mortgage Corp. violated the Equal

Credit Opportunity Act, 15 U.S.C. § 1691 by paying and receiving, respectively, higher yield

premiums with respect to loans made to minority borrowers, which necessarily impacts the rates

charged to such borrowers.

ANSWER:    Defendant denies the allegations in paragraph 57.

## COUNT VI
### (Civil Conspiracy to Commit Fraud)

58.    The Baileys realleges and incorporates by this reference paragraphs 1-29 as

though filly set forth.

ANSWER:    Defendant incorporates in answers to paragraph 1-29 as its answer
to paragraph 58.

59.    This claim is against both Defendants, First Franklin and Garfield Mortgage Corp.

ANSWER:    Defendant denies the allegations in paragraph 59.

60.    The Defendants combined and conspired with the appraiser to unlawfully arrange

for a fraudulent, appraised value for the Baileys property.

ANSWER:    Defendant denies the allegations in paragraph 60.

61.    The Defendants took concerted and overt actions to in furtherance of this

fraudulent purpose.  Garfield Mortgage Corp. agreed upon a value in advance, while First

Franklin overlooked the fact that the probable actual value of the property did not support a value

of $185,000.00.

ANSWER:    Defendant denies the allegations in paragraph 61.

62.    The Defendants conspired–out of excessive concern for their own fees,

commissions and profits–to misrepresent, conceal, overlook and suppress the actual market value

of the property being refinanced, by the Baileys.

ANSWER:    Defendant denies the allegations in paragraph 62.

63.    The Baileys were damaged as a result.

ANSWER:    Defendant denies the allegations in paragraph 63.

## COUNT VII
### (Credit Repair Organizations Act)

64.    The Baileys realleges and incorporates by this reference paragraphs 1-29 as

thou.gh fully set forth.

ANSWER:    Defendant denies the allegations in paragraph 64.

65.    This claim is against both Defendants, First Franklin and Garfield Mortgage Corp.

ANSWER:    Defendant admits the allegations in paragraph 65.

66.    The Defendants violated the CROA 15 U.S.C. §1679b by overstating Paul

Bailey's income and assets on the loan application.

ANSWER:    Defendant denies the allegations in paragraph 66.

14

WHEREFORE Defendant Garfield Mortgage Corporation demands judgment in its favor

and against Plaintiff and that the court award Defendant its costs.


Respectfully submitted,
Garfield Mortgage Corporation,


By:    /s/ John J. Lydon
           One of its attorneys.

John J. Lydon, Esq.
Gomberg, Sharfman, Gold & Ostler, P.C.
208 South LaSalle St., Suite 1200
Chicago, Illinois 60604
(312) 332-6194
fax (312) 332-4083

<u>CERTIFICATE OF SERVICE</u>

I, John J. Lydon, certify that, service of this document was accomplished by means of the Court's "ECF" system on July 18, 2008.


_____/s/ John J. Lydon_____